OPINION
Appellant, Daniel L. Clodfelter, and appellee, Sheila A. Clodfelter, were married on October 15, 1994. On December 10, 1999, appellant filed a complaint for divorce.
Hearings before a magistrate were held on July 10, 2000, and August 3, 2000.
On August 21, 2000, appellant filed a motion for new trial claiming appellee testified falsely during the hearings. By judgment entry filed August 29, 2000, said motion was denied.
On September 7, 2000, the magistrate filed a decision regarding the parties' property and debt. On same date, the trial court approved and adopted the magistrate's decision and granted the divorce.
On September 18, 2000, appellant filed objections to the magistrate's decision. By judgment entry filed October 25, 2000, the trial court remanded the case to the magistrate for additional findings of fact. Said findings were filed via decision filed October 30, 2000. By judgment entry filed same date, the trial court approved and adopted the magistrate's decision, and granted one of appellant's objections.
Appellant filed an appeal assigning three assignments of error. This court reversed the first assignment of error due to inconsistencies regarding an asset, to wit: a 1977 Harley Davidson motorcycle, found the remaining two assignments of error to be premature, and remanded the case back to the trial court. See, Clodfelter v. Clodfelter (May 4, 2001), Guernsey App. No. 00CA35, unreported.
Upon remand, the magistrate filed a decision on May 16, 2001, modifying the October 30, 2000 decision. By judgment entry filed May 16, 2001, the trial court approved and adopted the magistrate's decision.
Appellant filed an appeal assigning as error the two "premature" assignments of error.[1] This matter is now before this court for consideration. The assignments are as follows:
 I THE MAGISTRATE'S DECISION ADOPTED BY THE TRIAL COURT ON SEPTEMBER 7, 2000 THAT ALLOCATED PAYMENT OF DEBT INCURRED DURING THE COURSE OF THE PARTIES' MARRIAGE WAS AN ABUSE OF DISCRETION.
 II THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANT'S MOTION FOR A NEW TRIAL WHEN IT BECAME EVIDENT THAT APPELLEE'S (SIC) TESTIFIED FALSELY AT THE DIVORCE TRIAL.
 I
Appellant claims the trial court erred in determining the credit card debt was a marital debt and in assigning said debt, $7,978.97, to appellant. We disagree.
The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v.Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
Appellant does not dispute that the debts were made during the marriage, but rather that the extent of the debts was unknown to him and appellee engaged in financial misconduct in running up these debts.
Additional Finding of Fact No. 2, filed October 30, 2000, specifically addressed this issue:
 The Plaintiff objects to the payment of marital debts in the sum of $7978.97. Although the Plaintiff insisted that each party was responsible for the use of their own credit card, as well as the payment thereon, and although there was some evidence that there were some early attempts to adhere to that practice, there was no evidence presented to this Court that this practice was the result of a formal prenuptial agreement. Further, there was substantial evidence presented that the Plaintiff went into business for himself about mid-way into the marriage and was barely able to cover it's expenses for at least two years. He reported losses for the first two years. Only in the most recent year does he begin to show any profit, to wit: $5,000.00. This circumstance reflects a situation wherein the Defendant/Wife would depend on a more substantial use of the credit cards to cover normal marital expenses and needs for the family. The credit cards identified with the Plaintiff's significant business use were assigned to him in the Court's breakout. The credit cards identified by the Defendant as being her proper responsibility were assigned to her in the Court's breakout. All other credit card debt disputed was determined to be marital debt and made a part of the division of the marital debts and assets ratio.
In the original findings of fact filed September 7, 2000, the trial court found appellant's claimed lack of knowledge not to be credible:
 The remaining credit card debt is found to be marital debt which includes $843.66 owed to First National bank of Roanoke, Virginia; $1,981.13 owed to CitiBank Visa; $6,217.37 owed on the MBNA Visa; and $2,738.60 owed to the Fleet Visa. These debts total $11,780.76. The use of these credit cards should have been noticed by the Plaintiff because he would have benefitted from their use in living expenses being paid and assets being accumulated. His lack of knowledge is not credible.
Finding of Fact No. 12.
Appellee testified many of the credit card purchases were for trips taken by both parties; for the dogs; for glasses and contact lenses; for quilts; and for dental work. T. at 16-17, 19. Although appellant argues financial misconduct against appellee, he only earned $5,613 in 1999 (T. at 30), and yet he expected the household accounts to be paid.
Upon review, we find the evidence supports the findings of fact on the marital debts and division.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in denying his request for a new trial based upon false testimony by appellee. We disagree.
The granting of a new trial lies in the trial court's sound discretion. Civ.R. 59; Blakemore.
Appellant's motion for new trial was based upon Civ.R. 59(A)(2), "[m]isconduct of the jury or prevailing party." Appellant argued appellee lied to the trial court about the purchase of the dogs and having the records, and presented his own records in support. Appellant complains of the following testimony:
Now we are talking about dogs. Are there two dogs?
Yes sir.
One dog, well they are related aren't they?
Yes.
Mother and son is that?
Father.
Pardon me?
Father and son.
 Okay. Didn't Danny have the father, the older dog, before you two got married?
No we purchased them together.
Where did you buy them?
Down at Barnesville, or Jerusalem.
How much did you pay for the dogs?
Two Fifty (250.00) I think. I've got all the records.
T. at 118-119.
In denying the motion for new trial, the trial court found the following:
 The Plaintiff never mentioned these dogs on his cross-examination of the Defendant, nor on his direct testimony, nor in his rebuttal evidence. The evidence he offers in support of his above-cited motion was available at the time of this trial and could have been presented. It is not new evidence not known about at the time of trial. It was clearly as available then as it is now. The parties each rested their cases as the end of the second day of trial.
A review of the record establishes appellant did not present any evidence about the purchase of the dogs until the filing of his motion for new trial. Appellant did not claim the submitted records were unavailable during the trial. In Finding of Fact No. 15, filed September 7, 2000, the trial court noted the following:
 The parties own two male yellow Labrador retrievers, named Tobie and Buster. The Plaintiff seeks to possess both dogs and says they are non-marital property. This claim was not substantiated at the evidentiary hearing. There is evidence that both parties have established a very close relationship with these dogs and that they have become integrated into this family unit. The Defendant has expressed a desire to have Tobie and that the Plaintiff should take Buster. The Magistrate finds that both parties have an equal right to possess these dogs because of the nature of the relationship created and that such a relationship far outweighs any property claim as between these parties. The Magistrate finds that these dogs should be divided between the parties.
In Additional Finding of Fact No. 3, filed October 30, 2000, the trial court reiterated the lack of evidence, finding appellant did not attempt to present evidence on the issue until the objections were filed:
 The issue raised in the third objection relative to the lab dogs should be addressed as follows: The property issue involving the lab dogs was disputed at trial as to whether or not they were marital or premarital property. It was not until these objections herein were filed that the Plaintiff provided additional documentation clearly showing their premarital status. However, be that as it may, this evidence was not presented at trial. There was other evidence presented by the Defendant which clearly showed the Defendant established a strong relationship with the dogs, and had contributed to their care and upkeep everyday during the five year marriage. Photographs submitted showed that these dogs enjoyed the use of the house and the company of the Defendant. She established a well deserved interest in these dogs which must be recognized by the Court in all fairness to the Defendant.
We fail to find a right to a new trial based upon "misconduct" when appellant could have disputed appellee's testimony with his own records which were available to him at the time of the trial.[2]
Assignment of Error II is denied.
Hon. W. Scott Gwin, P.J. Hon. Sheila G. Farmer, J. Hon. John F. Boggins, J. concur.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Guernsey County, Ohio is affirmed.
[1] Appellee argues appellant is precluded from raising these issues because he failed to file objections to the May 16, 2001 decision pursuant to Civ.R. 53(E)(3). We disagree. It is clear appellant filed objections on these issues on September 18, 2000, and the trial court remanded the case to the magistrate for additional findings of fact. See, Judgment Entry filed October 25, 2000.
[2] The $250 purchase price had a diminutive impact on the division of debts and assets.